1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CD ALSTON,

11             Plaintiff,                    No. CIV S-11-2078 JAM GGH PS

12        vs.

13   PAUL TASSONE, et al.,

14             Defendants.                   ORDER AND

15                                           FINDINGS AND RECOMMENDATIONS

16   _____/

17             Plaintiff is proceeding pro se and in forma pauperis in this action, which was

18   referred to the undersigned by E.D. Cal. L.R. 302(c)(21), pursuant to 28 U.S.C. § 636(b)(1).

19   Presently pending before the court is defendants' motion to dismiss the operative first amended

20   complaint pursuant to Fed. R. Civ. P. 12(b)(6), originally noticed for hearing on March 15, 2012.

21   (Dkt. No. 21.)  After plaintiff failed to file a timely opposition pursuant to E.D. Cal. L.R. 230(c),

22   the motion was submitted on the record without oral argument.  (Dkt. No. 22.)  Subsequently, on

23   March 6, 2012, plaintiff filed a tardy opposition[1] to the motion along with a "motion for

24

25             [1] In light of plaintiff's pro se status and the court's desire to resolve the instant motion on
     the merits, the court nevertheless considered the arguments in plaintiff's late-filed opposition.
26   However, plaintiff is hereby put on notice that future tardy filings will be stricken.  Although the
     court liberally construes the pleadings of pro se litigants, they are required to adhere to the rules
     of court.  Failure to obey local rules may not only result in dismissal of the action, but "no party
     will be entitled to be heard in opposition to a motion at oral arguments if opposition has not been

1  summary judgment." (Dkt. No. 25.)

2        After reviewing the papers in support of and in opposition to defendants' motion,

3  the court's record in this matter, and the applicable law, the court now FINDS AS FOLLOWS:

4  BACKGROUND

5        The background facts are taken from the operative first amended complaint,

6  unless otherwise noted.  Plaintiff alleges that on March 26, 2011, while she was sitting in her car

7  parked in front of a gym, two Sacramento County Deputy Sheriffs, Paul Tassone and Bruce

8  Smith, stopped their patrol car behind her vehicle and approached her in a frightening, hostile,

9  and aggressive manner with their loaded guns drawn, without probable cause or reasonable

10  suspicion of criminal activity.  (See First Amended Complaint, Dkt. No. 11 ["FAC"] ¶¶ 5, 21-

11  24.)  The officers demanded that she show her hands and exit her vehicle, and ignored her

12  requests for them to explain what she had done wrong.  (FAC ¶¶ 5, 25-26.)  When Tassone asked

13  plaintiff if she had identification, she replied "if I did something wrong, sure."  (FAC ¶ 27.)

14  Tassone and Smith then told plaintiff that she was required to give her identification whenever a

15  "California cop" asks for it and that they were going to take her to jail.  (FAC ¶ 28.)  Plaintiff

16  attempted to explain the "Stop and Identify/*Terry* case law," but Tassone and Smith dismissed

17  plaintiff's interpretation of the law.  (FAC ¶ 29.)  Tassone then handcuffed plaintiff while Smith

18  kept his gun pointed at plaintiff.  (FAC ¶ 30.)

19        Thereafter, Tassone searched plaintiff's vehicle and personal property, stating that

20  they had a right to know who plaintiff was.  (FAC ¶¶ 5, 31.)  Tassone and Smith also ran a search

21  on plaintiff's tags and her name.  (FAC ¶ 33.)  Additionally, Tassone went into the gym and

22  asked the desk attendant whether plaintiff was a member of the gym.  (FAC ¶ 37.)  Plaintiff

23  asked several times what she was being detained or arrested for, but purportedly did not receive a

24

25  timely filed by that party."  E.D. Cal. L.R. 230(c).  More broadly, failure to comply with the
   Local Rules "may be grounds for imposition...of any and all sanctions authorized by statute or

26  Rule or within the inherent power of the Court."  E.D. Cal. L.R. 110; see also E.D. Cal. L.R. 183
   (requiring compliance with the Local and Federal Rules by pro se litigants).

response, although she does allege that Tassone and Smith at one point told her that she was being detained because she was violent "to create a justification for the in car camera." (FAC ¶¶ 32, 35-36.) During this time, plaintiff was detained in the back of the patrol car and released after 25-30 minutes without an explanation and with a demand that she leave the parking lot. (FAC ¶¶ 5, 32, 38.)

Plaintiff further alleges that the deputy sheriffs subsequently intentionally and maliciously completed a false event report, falsely accusing plaintiff of trying to place something behind her back as the officers approached, refusing to identify herself, and being confrontational, yelling, violent, and uncooperative. (FAC ¶¶ 6, 39-43.)

When plaintiff lodged a citizen's complaint regarding the incident with the Sacramento County Sheriff's Department, defendant Matt Morgan, a lieutenant for Sacramento County Sheriff Department Bureau of Professional Standards, allegedly refused to investigate it and forwarded her complaint to another division. (FAC ¶ 44.) Defendant Jeana Zwolinski, the sergeant in charge of Tassone and Smith, also informed plaintiff that plaintiff's complaint was not an internal affairs issue, that she was proud of her officers, and that everything was done by the book. (FAC ¶¶ 45-46.)

On August 5, 2011, plaintiff filed the instant action for damages primarily alleging liability for constitutional violations under 42 U.S.C. § 1983 and for related state law tort claims. (Dkt. No. 1.) Subsequently, on October 31, 2011, the court dismissed some of plaintiff's claims with leave to amend pursuant to 28 U.S.C. § 1915. (Dkt. No. 8.) Thereafter, on November 28, 2011, plaintiff filed a first amended complaint. (Dkt. No. 11.) The first amended complaint names Tassone, Smith, Zwolinski, Scott Jones (the Sacramento County Sheriff), Morgan, the Sacramento County Sheriff Department Bureau of Professional Standards, the Sacramento County Sheriff Department, and the County of Sacramento as defendants.[2] On

---

[2] Plaintiff has named the individual, non-entity defendants in both their individual and official capacities. "[A]n official-capacity suit is, in all respects other than name, to be treated as

3

1  December 6, 2011, the court ordered service with the first amended complaint on all named

2  defendants, except the Sacramento County Sheriff Department Bureau of Professional Standards,

3  which the court held was simply a sub-department within the Sacramento County Sheriff

4  Department.  (Dkt. No. 13.)

5            The instant motion to dismiss followed.

6  DISCUSSION

7            In considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim

8  upon which relief can be granted, the court must accept as true the allegations of the complaint in

9  question, Erickson v. Pardus, 551 U.S. 89, 94 (2007), and construe the pleading in the light most

10 favorable to the plaintiff, see Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  However, to avoid

11 dismissal for failure to state a claim, a complaint must contain more than "naked assertions,"

12 "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Bell

13 Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007).  In other words, "[t]hreadbare recitals

14 of the elements of a cause of action, supported by mere conclusory statements do not suffice."

15 Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).   Furthermore, a claim upon which the court can

16 grant relief must have facial plausibility.  Twombly, 550 U.S. at 570.  "A claim has facial

17 plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

18 inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949.

19            Before turning to an analysis of each individual substantive claim raised by

20 plaintiff, the court first addresses defendants' argument that certain individual and entity

21 defendants should be dismissed from the case.

22            Defendant Sacramento County Sheriff Department

23            Defendants correctly argue that defendant Sacramento County Sheriff Department

24 is an improper party to the action, because it is merely a department or subdivision of the local

25 _____

26 a suit against the entity."  Kentucky v. Graham, 473 U.S. 159, 166 (1985).  Accordingly, all
   further references to the individual, non-entity defendants relate to the individual capacity claims.

1   government entity properly named as a party, in this case the County of Sacramento.  See Pellum

2   v. Fresno Police Dep't, 2011 WL 350155, at *2 (E.D. Cal. Feb. 2, 2011); Vance v. County of

3   Santa Clara, 928 F. Supp. 993, 996 (N.D. Cal. 1996) (noting that the term "persons" for purposes

4   of section 1983 does not encompass municipal departments); Stump v. Gates, 777 F. Supp. 808,

5   816 (D. Colo. 1991) ("naming a municipal *department* as a defendant is not an appropriate

6   means of pleading a § 1983 action against a municipality.")  To the extent that plaintiff asserts

7   state law claims against the Sacramento County Sheriff Department, it remains true that it is a

8   superfluous party to the litigation, because as a municipal department, it cannot be held liable for

9   damages separate from the County of Sacramento.  Therefore, defendant Sacramento County

10  Sheriff Department should be dismissed with prejudice as an improper party.

11              Defendants Jeana Zwolinski, Scott Jones, and Matt Morgan

12              Defendant Zwolinski is the sergeant in charge of Tassone and Smith.  (FAC ¶ 13.)

13  Defendant Scott Jones is the sheriff of the Sacramento County Sheriff Department.  (FAC ¶ 14.)

14  Defendant Matt Morgan is a lieutenant in the Sacramento County Sheriff Department Bureau of

15  Professional Standards tasked with investigating complaints against deputy sheriffs.  (FAC ¶ 16.)

16              Plaintiff asserts claims for constitutional violations pursuant to 42 U.S.C. § 1983

17  and state law claims against these defendants.  With respect to the constitutional claims, the Civil

18  Rights Act provides as follows:

19              Every person who, under color of [state law] . . . subjects, or causes
                to be subjected, any citizen of the United States . . . to the
20              deprivation of any rights, privileges, or immunities secured by the
                Constitution . . . shall be liable to the party injured in an action at
21              law, suit in equity, or other proper proceeding for redress.

22  42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

23  actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

24  Monell v. Department of Social Servs., 436 U.S. 658, 692 (1978); Rizzo v. Goode, 423 U.S. 362

25  (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

26  meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or

5

1   omits to perform an act which he is legally required to do that causes the deprivation of which

2   complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

3           Liberally construed, plaintiff's first amended complaint essentially seeks to hold

4   defendants Zwolinski, Jones, and Morgan liable under 42 U.S.C. § 1983 on theories of

5   supervisory liability for the actions of Tassone and Smith, failure to investigate plaintiff's

6   complaints, and conspiracy.  However, for the reasons discussed below, the first amended

7   complaint does not cure the deficiencies of the original complaint with respect to these claims as

8   previously outlined in the court's screening order pursuant to 28 U.S.C. § 1915.

9                               *Supervisory Liability*

10          Importantly, supervisors cannot be held liable in their individual capacities unless

11  a causal connection is established between the acts alleged to have breached a constitutional duty

12  and the harm allegedly suffered by plaintiff.

13      A defendant may be held liable as a supervisor under § 1983 "if there exists either
        (1) his or her personal involvement in the constitutional deprivation, or (2) a
14      sufficient causal connection between the supervisor's wrongful conduct and the
        constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.1989). "[A]
15      plaintiff must show the supervisor breached a duty to plaintiff which was the
        proximate cause of the injury. The law clearly allows actions against supervisors
16      under section 1983 *as long as a sufficient causal connection is present* and the
        plaintiff was deprived under color of a federally secured supervisorial."
17      *Redman*, 942 F.2d at 1447 (internal quotation marks omitted).

18       "The requisite causal connection can be established ... by setting in motion a
        series of acts by others," id. (alteration in original; internal quotation marks
19      omitted), or by "knowingly refus[ing] to terminate a series of acts by others,
        which [the supervisor] knew or reasonably should have known would cause others
20      to inflict a constitutional injury," *Dubner v. City & Cnty. of San Francisco*, 266
        F.3d 959, 968 (9th Cir.2001). "A supervisor can be liable in his individual
21      capacity for his own culpable action or inaction in the training, supervision, or
        control of his subordinates; for his acquiescence in the constitutional deprivation;
22      or for conduct that showed a reckless or callous indifference to the rights of
        others." *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir.1998) (internal
23      alteration and quotation marks omitted).

24  Starr v. Baca, 652 F.3d 1202, 1207-1208 (9th Cir. 2011) (emphasis added); see also Jones v.

25  Williams, 297 F.3d 930, 937 (9th Cir. 2002).  In addition, the Ninth Circuit has again

26  emphasized that the pleading of supervisorial liability is subject to the Iqbal standards.  Chavez v.

                                          6

1    United States, No. 10-17659 (9th Cir. June 20, 2012).  Thus, there must be facial plausibility in a

2    plaintiff's allegations that some action/inaction on the part of a supervisor *caused* her alleged

3    constitutional injury.

4            As an initial matter, there is no indication that Morgan had any supervisory

5    responsibility (beyond the authority to perform an internal investigation, discussed below) for

6    Tassone and Smith.  Moreover, even assuming for the moment that Tassone and Smith violated

7    plaintiff's constitutional rights during the detention and search, the first amended complaint

8    makes clear that Zwolinski, Jones, and Morgan were not at the scene and thus did not personally

9    participate in the detention and search.  Indeed, plaintiff alleges that Zwolinski and Morgan only

10   became aware of the incident when she filed a citizen's complaint, and does not even allege that

11   Jones is personally aware of the incident.  Thus, there are no facts suggesting that these

12   defendants ordered the detention and search, or knew about it but failed to prevent it.

13           Plaintiff claims that Zwolinski later stated that she was proud of her officers and

14   that she believes that they had done everything by the book.  However, plaintiff does not

15   articulate how these general expressions of confidence in her officers' compliance with the law,

16   *made after the fact*, caused the alleged unreasonable search and detention.  Furthermore, Jones

17   appears to have been named as a defendant solely due to his position as Sacramento County

18   Sheriff.  Plaintiff's vague allegations that Jones disseminated unconstitutional policies and

19   endorsed illegal police methods or customs are entirely conclusory and patently insufficient to

20   state a claim against Jones.

21           Thus, plaintiff fails to specifically allege any causal link between defendants

22   Zwolinski, Jones, and Morgan to the alleged constitutional violations by Tassone and Smith

23   sufficient to hold these defendants liable under a theory of supervisory liability.  Plaintiff was

24   previously advised of the legal requirements to state a claim under a theory of supervisory

25   liability and failed to cure the identified deficiencies upon being granted leave to amend.

26   Moreover, given the lack of connection between these defendants and plaintiff's detention and

1   search, it seems implausible that the claim could be cured by further amendment.  Therefore,

2   plaintiff's 42 U.S.C. § 1983 claim against these defendants on the theory of supervisory liability

3   should be dismissed with prejudice.

4   <u>*Failure to Investigate*</u>

5              Plaintiff further alleges that Zwolinski, Jones, and Morgan refused to investigate

6   her citizen's complaint against Tassone and Smith in violation of her Due Process rights under

7   the Fourteenth Amendment.[3]  The Fourteenth Amendment to the United States Constitution

8   provides that a State shall not "deprive any person of life, liberty, or property, without due

9   process of law."  As an initial matter, plaintiff fails to provide any authority for the proposition

10  that she has a valid property interest[4] in, or an entitlement to, an internal investigation of her

11  complaint.  The court is unaware of any federal law governing the internal disciplinary affairs of

12  a county sheriff department, and plaintiff does not even point to any particular state law

13  addressing the matter.

14             Moreover, even if state law does somehow create an entitlement to an internal

15  investigation, that does not mean that it constitutes a property interest for purposes of the Due

16  Process Clause.  <u>See</u> <u>Town of Castle Rock v. Gonzalez</u>, 545 U.S. 748, 766 (2005) (holding that a

17  plaintiff did not have a property interest under the Due Process Clause in police enforcement of a

18  restraining order against her husband).  As the U.S. Supreme Court noted in <u>Town of Castle</u>

19  <u>Rock</u> with respect to enforcement of restraining orders, the performance of an internal

20  investigation does not "resemble any traditional conception of property," does not "have some

21  ascertainable monetary value," and has only an indirect and incidental effect on plaintiff.  <u>Town</u>

22

23             [3] Plaintiff actually alleges that defendants Zwolinski, Jones, and Morgan's failure to
24  investigate violates her Due Process rights under the Fourth Amendment.  However, because that
    makes no sense in the context of the pled facts, the court construes the allegation as asserting a
25  violation of plaintiff's Due Process rights under the Fourteenth Amendment.

26             [4] It seems clear that no life or liberty interest can be reasonably invoked with respect to
    the internal investigation at issue here.

1   of Castle Rock, 545 U.S. at 766-68.  The focus of such an investigation would obviously be the

2   internal discipline of the deputy sheriffs involved.  Even if the court accepts plaintiff's contention

3   that the failure to investigate places her at further risk of unconstitutional violations, a somewhat

4   speculative assertion at that, it does not change the indirect and incidental nature of any such

5   consequences.  Even though the consequences of the police's failure to enforce the restraining

6   order in Town of Castle Rock were dire, resulting in the death of that plaintiff's children, the

7   U.S. Supreme Court nonetheless found the benefit to the plaintiff of restraining orders'

8   enforcement to be too indirect and incidental to constitute a property interest under the Due

9   Process Clause.  Id. at 767-68.

10          Therefore, the court concludes that plaintiff does not have a protected property

11   interest in an internal investigation of her complaint for purposes of the Due Process Clause of

12   the Fourteenth Amendment, and as such, defendants Zwolinski, Jones, and Morgan cannot be

13   held liable under that theory.  Accordingly, further leave to amend this claim against these

14   defendants would be futile and it should be dismissed with prejudice.

15                                              *Conspiracy*

16          Plaintiff also alleges that Morgan and Zwolinski conspired with Tassone and

17   Smith to deprive plaintiff of her constitutional rights in violation of 42 U.S.C. § 1983.  To state a

18   claim for conspiracy under 42 U.S.C. § 1983, plaintiff must plead specific facts showing an

19   agreement or meeting of minds between the defendants to violate her constitutional rights.

20   Woodrum v. Woodward Cty., 866 F.2d 1121, 1126 (9th Cir. 1989).  Plaintiff must also show

21   how an actual deprivation of her constitutional rights resulted from the alleged conspiracy.  Id.

22   Because a conspiracy claim under 42 U.S.C. § 1983 requires proof of subjective intent, it is

23   subject to a heightened pleading standard.  Turner v. County of Los Angeles, 18 Fed. App'x 592,

24   596 (9th Cir. 2001) (citing Branch v. Tunnell, 937 F.2d 1382, 1386 (9th Cir. 1991) and Buckey

25   v. County of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992)).

26   \\\\\

                                                      9

In this case, plaintiff alleges that Morgan and Zwolinski's "attempts to assist with covering up illegal acts further supported Defendants with conspiring to deprive Plaintiff of her civil rights. [Morgan and Zwolinski] have a duty to investigate and protect the public against officers who behave unethically and unlawfully." (FAC ¶ 92.)  However, these allegations are conclusory, because they do not provide any facts outlining how Morgan and Zwolinski supposedly covered up the allegedly illegal acts.

Furthermore, the first amended complaint does not allege any facts that would support an inference of an agreement between Morgan, Zwolinski, and others, or a subjective intent, to violate plaintiff's constitutional rights.  Nor can plaintiff allege such an agreement, given that Zwolinski and Morgan only learned of the incident when plaintiff later filed her citizen's complaint.  Additionally, there is no indication that Zwolinski or Morgan ordered or authorized the detention and search.  Plaintiff's "cover up" allegations appear to be merely another variation on her argument that she had a constitutional right to an internal investigation, a claim the court has already rejected for the reasons discussed above.

Accordingly, the court finds that plaintiff's conspiracy claim under 42 U.S.C. § 1983 against defendants Zwolinski and Morgan is frivolous and implausible and should be dismissed with prejudice.

### State Law Claims

The first amended complaint also purports to state claims for negligence and intentional infliction of emotional distress against defendants Zwolinski, Morgan, and Jones. Assuming the appropriate administrative claims statutes have been satisfied by plaintiff, the merits of the claims are deficient.

Under California law, "to prevail in an action based upon a defendant's alleged negligence, a plaintiff must demonstrate that the defendant owed the plaintiff a legal duty, that the defendant breached the duty, and that the breach was a proximate or legal cause of his or her injuries." Ambriz v. Kelegian, 146 Cal. App. 4th 1519, 1530-31 (2007).  Here, plaintiff vaguely

alleges that Jones had a "duty to disperse policies that are constitutional." (FAC ¶ 50).  However, plaintiff fails to provide any authority for the proposition that this is a cognizable duty owed to her as an individual and which she has standing to enforce by virtue of a personal negligence claim against Jones.  Moreover, beyond conclusory allegations, plaintiff entirely fails to allege how Jones breached such a duty.  Plaintiff further alleges that Zwolinski and Morgan had a "duty to investigate complaints of police misconduct."  (FAC ¶ 49.)  Again, plaintiff identified no right under the Constitution, federal law, or state law to an internal investigation of her complaint that can form the basis of an individual tort claim.  It is essentially an internal disciplinary matter. The appropriate vehicle to address the underlying alleged constitutional violations by Tassone and Smith is plaintiff's claims pursuant to 42 U.S.C. § 1983, as discussed below.

Plaintiff's claim for intentional infliction of emotional distress against Zwolinski, Morgan, and Jones is equally frivolous.  To state a prima facie case for intentional infliction of emotional distress, a plaintiff must plead facts showing "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Davidson v. City of Westminster, 32 Cal. 3d 197, 209 (1982).  For conduct to be "outrageous" it "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." Id.  The first amended complaint does not even remotely plead conduct by Zwolinski, Morgan, and Jones that could be classified as "outrageous."  Nor does plaintiff provide non-conclusory factual allegations showing how these defendants' conduct proximately caused her severe emotional distress.  Because plaintiff's state law claims of negligence and intentional infliction of emotional distress against these defendants are patently frivolous, they should be dismissed with prejudice.

In sum, all of plaintiff's claims against defendants Zwolinski, Morgan, and Jones are either patently frivolous, implausible, and/or incapable of being cured through further

11

1  amendment within the strictures of Fed. R. Civ. P. 11.  Accordingly, the court recommends that

2  these defendants be dismissed from the case with prejudice.

3                              Defendant County of Sacramento

4              Plaintiff alleges liability under 42 U.S.C. § 1983 against the County of

5  Sacramento based on alleged unconstitutional policies and inadequate training and supervision.[5]

6              Since there is no respondeat superior liability under § 1983, counties and

7  municipalities may be sued under § 1983 only upon a showing that an official policy or custom

8  caused the constitutional tort.  Monell v. New York City Dep't of Social Services, 436 U.S. 658,

9  691-94 (1978).  Stated differently, "[i]t is only when the execution of the government's policy or

10  custom...inflicts the injury that the municipality may be held liable under § 1983."  Canton v.

11  Harris, 489 U.S. 378, 385 (1989).  "[L]ocal governments, like any other § 1983 'person,'... may

12  be sued for constitutional deprivations visited pursuant to governmental 'custom' even though

13  such a custom has not received formal approval through the body's official decisionmaking

14  channels."  Monell, 436 U.S. at 690-91.  A local governmental entity may "be liable if it had a

15  policy or custom of failing to train its employees and that failure to train caused the constitutional

16  violation.  In particular . . . the inadequate training of police officers could be characterized as the

17  cause of the constitutional tort if – and only if – the failure to train amounted to 'deliberate

18  indifference' to the rights of persons with whom the police come into contact."  Collins v. City of

19  Harker Heights, 503 U.S. 115, 123-24 (1992).

20              Furthermore, as one federal district court in California recently explained:

21      In order to withstand a motion to dismiss for failure to state a
        claim, a Monell claim must consist of more than mere "formulaic
22      recitations of the existence of unlawful policies, customs, or
        habits."  Warner v. Cnty of San Diego, 2011 U.S. Dist. LEXIS
23

24          [5]  The first amended complaint also purports to state a Monell claim against defendants
    Sacramento County Sheriff Department, Morgan, and Zwolinski.  However, for the reasons
25  discussed above, the court has already concluded that defendant Sacramento County Sheriff
    Department should be dismissed as an improper party.  Furthermore, defendants Morgan and
26  Zwolinski cannot be liable on a Monell claim, because they are not municipal entities.

14312, at *10, 2011 WL 662993 (S.D. Cal., Feb. 14, 2011).  Prior to the Supreme Court's holdings in *Twombly* and *Iqbal*, the Ninth Circuit had held that "a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss 'even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.'" *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988) (quoting *Shah v. Cnty. of L.A.*, 797 F.2d 743, 747 (9th Cir. 1986)).  In light of *Twombly* and *Iqbal*, however, something more is required; mere conclusory allegations are insufficient.  *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 557; *see also Warner*, 2011 U.S. Dist. LEXIS 14312, at *10, 2011 WL 662993.

J.K.G. v. County of San Diego, 2011 WL 5218253, at *8 (S.D. Cal. Nov. 2, 2011).

In this case, plaintiff merely recites the existence of certain "illegal police methods or customs that exhibits [sic] deliberate indifference and demonstrates [sic] a conscious disregard for Plaintiff's constitutional rights and state law rights further subjecting Plaintiff to future infringements by agents acting under color of law." (FAC ¶ 81.)  Plaintiff also alleges a "failure to adequately train officers in the use of force, the importance of integrity and honesty, and civil rights violations" as well as "lack of supervision." (FAC ¶¶ 82, 84.)

These conclusory allegations are unsupported by any specific facts.  Plaintiff refers to alleged statements by individual defendants, such as Tassone's and Smith's alleged statement that plaintiff was mandated to comply "whenever a California cop asked for identification." (FAC ¶ 83.)  However, given that Tassone and Smith are evidently not policymakers for the County, plaintiff fails to explain how these isolated statements by individuals establish a policy by the County.  Even assuming for the moment that Tassone and Smith violated plaintiff's constitutional rights, plaintiff has provided no specific facts outside of this incident from which to infer that the County of Sacramento systematically condones or endorses the use of excessive force, unlawful detentions and searches, or the filing of false police reports.  Thus, plaintiff's conclusory allegations, without specific supporting facts, are implausible.

\\\\\

13

Moreover, to the extent that plaintiff's <u>Monell</u> claim is premised on inadequate training or supervision, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability...."   <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 823-24 (1985). Deliberate indifference is shown when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers...can reasonably be said to have been deliberately indifferent to the need." <u>Clouthier v. County of Contra Costa</u>, 591 F.3d 1232, 1249 (9th Cir. 2010).  Here, plaintiff fails to allege any specific facts regarding obvious deficiencies in the County's training program.  <u>See</u> <u>Canton</u>, 489 U.S. at 390-91 ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.")

In short, the facts alleged by plaintiff relate to a specific incident as opposed to a pervasive problem with a specific County policy or custom.  Under the circumstances presented here, the court finds it unlikely that this claim can be cured through further amendment.  This conclusion is reinforced by the fact that plaintiff has filed similar lawsuits in this district against various Sacramento area law enforcement agencies, several of which are pending before the undersigned, containing virtually identical conclusory allegations.[6]

For these same reasons, even assuming that all administrative claims statutes have been satisfied, plaintiff's remaining state law claims of negligence and intentional infliction of emotional distress against the County of Sacramento should also be dismissed with prejudice. Plaintiff fails to allege a cognizable duty that the County breached or any outrageous conduct by the County.

Accordingly, the court recommends that defendant County of Sacramento also be dismissed from the action with prejudice.

---

[6] <u>See</u> <u>e.g.</u> 11-cv-2077-KJM-GGH; 11-cv-2281-GEB-GGH.

1          Defendants Tassone and Smith

2          With only claims against the primary actors, defendants Tassone and Smith,

3   remaining, the court turns to an analysis of plaintiff's substantive claims against these

4   defendants.  The difficulty involved with reviewing these claims is that they are scattered

5   throughout the complaint in a hodgepodge fashion.  Plaintiff includes portions of claims in

6   various different causes of action, and sometimes mixes federal and state law claims in one cause

7   of action.  Therefore, instead of examining each cause of action, it is necessary to construe the

8   complaint as a whole and determine which claims are sufficiently pled.

9                          *Claims under 42 U.S.C. § 1983*

10         Liberally construed, the first amended complaint states claims under 42 U.S.C. §

11  1983 for violation of the Fourth Amendment under three different theories – unlawful detention

12  (first, second,[7] fourth, tenth, and eleventh causes of action), unlawful search (seventh cause of

13  action), and excessive force (first, third, fourth, sixth, and eleventh causes of action).

14         To state a claim for violation of the Fourth Amendment arising from a detention, a

15  plaintiff must allege that the detention was without reasonable suspicion.  Florida v. Royer, 460

16  U.S. 491, 500 (1983).  Reasonable suspicion exists to the extent "a police officer observes

17  unusual conduct which leads him reasonably to conclude in light of his experience that criminal

18  activity may be afoot...."  Terry v. Ohio, 392 U.S. 1, 30 (1968).  "When officers make a stop

19  supported by reasonable suspicion, they are authorized to take such steps as are reasonably

20  necessary to protect their personal safety and to maintain the status quo during the course of the

21  stop."  U.S. v. $109,179 in United States Currency, 228 F.3d 1080, 1084 (9th Cir. 2000).  To that

22  end, an officer may lawfully put a suspect in a patrol vehicle while the officer ascertains the

23

24         [7] Plaintiff's second cause of action is labeled as "False Imprisonment - Violation of the
    Fourth Amendment to the U.S. Constitution: Actionable under 42 U.S.C. § 1983."  Because
25  plaintiff does not indicate that she intends to bring a claim for false imprisonment under
    California law, and because the allegations in this cause of action relate to seizure of plaintiff's
26  person, i.e. her detention, the court construes it as a claim of unlawful detention in violation of
    the Fourth Amendment under 42 U.S.C. § 1983.

suspect's identity.  U.S. v. Thompson, 597 F.2d 187, 190 (9th Cir. 1979).  With respect to the issue of excessive force, the Fourth Amendment's standard of objective reasonableness governs.  Graham v. Connor, 490 U.S. 386, 395 (1989).  Detaining a suspect at gunpoint is not excessive force where the officer reasonably believed that the suspect posed an immediate threat to the officer's safety.  See Henry v. Storey, 658 F.3d 1235, 1239 (10th Cir. 2011).

Defendants urge dismissal of the claims of unlawful detention, unlawful search, and excessive force for primarily the same reasons.  Defendants contend that plaintiff appears to concede that Smith and Tassone had reasonable suspicion to detain her and search her vehicle, because she acknowledges that Smith and Tassone saw her placing an object, potentially a weapon, behind her back in a suspicious manner.  Additionally, defendants state that plaintiff conceded that she refused to identify herself and acknowledged that Tassone and Smith thought she was violent and confrontational.  As such, defendants argue that Tassone and Smith reasonably believed that plaintiff posed an immediate threat to their safety and were justified in approaching plaintiff with guns drawn, detaining her in the patrol vehicle, and searching her vehicle and personal property.

However, as plaintiff points out in her opposition, defendants misconstrue the allegations in the first amended complaint.  Plaintiff specifically pleads that Tassone and Smith *falsely* stated that she had placed something behind her back (FAC ¶ 40) and *falsely* claimed that she became violent, confrontational, and uncooperative.  (FAC ¶¶ 41-43.)  She also claims that she was willing to provide identification if the deputy sheriffs explained why they were detaining her.  (FAC ¶ 27.)  Therefore, a fair reading of plaintiff's complaint does not indicate that plaintiff acknowledged or conceded that the deputy sheriffs had a reasonable suspicion for detaining her and were justified in detaining her in the manner that they did.  To the contrary, plaintiff

\\\\\

\\\\\

\\\\\

1    contends that she did nothing wrong and was simply sitting in the gym parking lot when Tassone

2    and Smith decided to harass her without reasonable suspicion or probable cause.[8]

3           It may well be that, with further development of the facts in discovery, Tassone

4    and Smith can show that they had a reasonable suspicion for detaining and searching plaintiff,

5    and that the manner in which they did it was justified.  However, these are factual issues

6    inappropriate for resolution on a motion to dismiss, in the context of which the plaintiff's factual

7    allegations must be taken as true.  Accordingly, the court recommends that defendant's motion to

8    dismiss the claims under 42 U.S.C. § 1983 against Tassone and Smith for violation of the Fourth

9    Amendment under theories of unlawful detention, unlawful search, and excessive force be

10   denied.

11          The first amended complaint also includes a claim under 42 U.S.C. § 1983 for

12   conspiracy to violate plaintiff's Fourth Amendment rights against Tassone and Smith (tenth

13   cause of action).  As discussed above, to state a claim for conspiracy under 42 U.S.C. § 1983,

14   plaintiff must plead specific facts showing an agreement or meeting of minds between the

15   defendants to violate her constitutional rights.  Woodrum v. Woodward Cty., 866 F.2d 1121,

16   1126 (9th Cir. 1989).  Plaintiff must also show how an actual deprivation of her constitutional

17   rights resulted from the alleged conspiracy.  Id.  Because a conspiracy claim under 42 U.S.C. §

18   1983 requires proof of subjective intent, it is subject to a heightened pleading standard.  Turner v.

19   County of Los Angeles, 18 Fed. App'x 592, 596 (9th Cir. 2001) (citing Branch v. Tunnell, 937

20   F.2d 1382, 1386 (9th Cir. 1991) and Buckey v. County of Los Angeles, 968 F.2d 791, 794 (9th

21   Cir. 1992)).

22   _____

23        [8] Furthermore, defendants contend that plaintiff does not allege with sufficient specificity

24   how her vehicle was searched, i.e. whether it was only searched by an exterior visual inspection
     or by entry into parts of the vehicle.  The court disagrees.  Based on plaintiff's allegations, a
     reasonable inference can be drawn that the deputy sheriffs searched the interior of the vehicle,

25   especially given plaintiff's additional references to a search of her personal property.  Contrary to
     defendants' contention, plaintiff need not list each item in the vehicle that was allegedly

26   searched.  Such information can easily be ascertained in discovery.

1          Here, plaintiff alleges that Tassone and Smith were driving around the parking lot

2   searching for citizens to harass, and she indicates that these defendants approached her after they

3   had already detained another person for unknown reasons.  (FAC ¶¶ 50, 91.)  She claims that

4   they decided to deprive plaintiff of her constitutional rights by handcuffing her and detaining her

5   without a valid reason, and then concocting a false story to cover up their illegal detention by

6   stating that she tried to place something behind her back as they approached and was violent and

7   uncooperative.  (FAC ¶¶ 39-43, 91.)  Because plaintiff has alleged facts from which an

8   agreement and intent to violate her constitutional rights can be reasonably inferred, the claim is

9   sufficient to survive a motion to dismiss, and defendants' motion to dismiss as to this claim

10  should be denied.

11         However, to the extent plaintiff purports to state a claim under 42 U.S.C. § 1983

12  for violation of Due Process under the Fourteenth Amendment based on Tassone's and Smith's

13  alleged failure to investigate suspicions of criminal activities before detaining her (see fourth

14  cause of action), such a claim is improper.  All constitutional claims, including excessive force

15  claims, resulting from an arrest, investigatory stop, or other seizure of a free citizen should be

16  analyzed under the Fourth Amendment rather than under a substantive due process approach.

17  Graham v. O'Connor, 490 U.S. 386, 395 (1989).  Accordingly, plaintiff's claim for violation of

18  Due Process under the Fourteenth Amendment against Tassone and Smith should be dismissed

19  with prejudice.

20                          *Abuse of Process*

21         In her fifth cause of action, plaintiff attempts to state an abuse of process claim

22  against Tassone and Smith for violation of the Fourth Amendment under 42 U.S.C. § 1983.  She

23  alleges that these defendants "employed legal process for unlawful objectives" and that they

24  abused their authority to rid the community of persons that they personally deemed undesirable.

25  (FAC ¶ 64.)

26  \\\\\

18

It is unclear whether an abuse of process claim may even be maintained under 42 U.S.C. § 1983, since abuse of process is a state law tort.  See Campbell v. City of Bakersfield, 2006 WL 2054072, at *21 (E.D. Cal. Jul. 21, 2006); Newsome v. McCabe, 256 F.3d 747, 751 (7th Cir. 2001) (noting that tort of malicious prosecution under section 1983 is not available when an adequate opportunity exists to pursue a state law claim).  Nevertheless, regardless of whether it is stated under 42 U.S.C. § 1983 or under state law, plaintiff's abuse of process claim is fatally deficient.  "Process is action taken pursuant to judicial authority.  It is not action taken without reference to the power of the court.  Thus, serving upon plaintiff a false notice that a bench warrant had been issued is not process, because in making the false statement defendant took no action pursuant to court authority."  Adams v. Superior Court, 2 Cal. App. 4th 521, 530 (1992).  In this case, there was no "process" involved, because Tassone and Smith were not acting pursuant to judicial authority.  There was no action pending and the deputy sheriffs were not even executing a warrant.  As such, their alleged actions, even if assumed to be true, do not qualify as "abuse of process."  Therefore, this claim should be dismissed with prejudice.

### *Assault*

Plaintiff's third cause of action states a claim for assault against Tassone and Smith under California law.[9]  To state a claim for assault under California law, a plaintiff must show "(1) that defendant intended to cause harmful or offensive contact, or the imminent apprehension of such contact, and (2) that plaintiff was put in imminent apprehension of such contact."  Austin v. Terhune, 367 F.3d 1167, 1172 (9th Cir. 2004).  Plaintiff alleges that by pointing a loaded gun at her, the defendants intentionally put plaintiff in imminent apprehension of serious bodily harm.  (FAC ¶ 58.)

\\\\\

---

[9] Although plaintiff also labels her assault claim as being brought based on violation of the Fourth Amendment under 42 U.S.C. § 1983, such a claim is not cognizable and is merely duplicative of her other Fourth Amendment claims discussed above.  As such, it should be dismissed with prejudice.

1    Defendants contend that Tassone and Smith, as law enforcement officers, may

2 lawfully use force to make a detention.  Edson v. City of Anaheim, 63 Cal. App. 4th 1269, 1273

3 (1998).  Accordingly, an officer commits assault only if the officer's use of force was

4 unreasonable under the circumstances, the same objective standard that applies to excessive force

5 cases under section 1983.  Johnson v. County of Los Angeles, 340 F.3d 787, 794 (9th Cir. 2003).

6 Defendants again rely on plaintiff's supposed acknowledgment that Tassone and Smith saw

7 plaintiff put something, possibly a weapon, behind her back to argue that Tassone and Smith did

8 not use unreasonable force by drawing their guns.  However, as noted above, plaintiff made no

9 such acknowledgment in her pleadings, and this is a factual issue not appropriately resolved on a

10 motion to dismiss.  Accordingly, defendants' motion to dismiss as to the assault claim under

11 California law should be denied.

12                                    *Defamation*

13    In support of her claim for defamation against Tassone and Smith, plaintiff

14 essentially alleges that these defendants maliciously and intentionally drafted a false police report

15 stating that plaintiff was violent, uncooperative, and needed to be restrained.  (FAC ¶ 78.)  She

16 claims that these false statements increase the risk of plaintiff receiving serious injury or

17 differential treatment during future encounters with law enforcement officers.  (FAC ¶ 78.)

18    "The tort of defamation involves (a) a publication that is (b) false, (c) defamatory,

19 and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage."

20 Taus v. Loftus, 40 Cal. 4th 683, 720 (2007).  Defendants correctly point out that plaintiff fails to

21 allege that the police report was "published" to anyone.  Moreover, plaintiff cannot state a claim

22 for defamation based on statements in the police report, because a police report is entitled to an

23 absolute privilege under Cal. Civ. Code § 47.  See Podesta v. City of San Leandro, 2005 WL

24 2333802, at **6-7 (N.D. Cal. Sept. 21, 2005) (citing Johnson v. Symantec Corp., 58 F. Supp. 2d

25 1007 (N.D. Cal. 1999) and Hagberg v. California Federal Bank FSB, 32 Cal. 4th 350 (2004));

26 Ferrin v. Bias, 2004 WL 5375474, at *7 (C.D. Cal. Nov. 17, 2004); Bullock v. City of San

1   <u>Rafael</u>, 1994 WL 621975, at **2-3 (N.D. Cal. Oct. 27, 1994).

2          Therefore, plaintiff's defamation claim against Tassone and Smith should be

3   dismissed with prejudice.

4                        <u>Intentional Infliction of Emotional Distress</u>

5          As noted above, to state a prima facie case for intentional infliction of emotional

6   distress ("IIED"), a plaintiff must plead facts showing "(1) extreme and outrageous conduct by

7   the defendant with the intention of causing, or reckless disregard of the probability of causing,

8   emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3)

9   actual and proximate causation of the emotional distress by the defendant's outrageous conduct."

10  <u>Davidson v. City of Westminster</u>, 32 Cal. 3d 197, 209 (1982).  For conduct to be "outrageous" it

11  "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community."

12  <u>Id</u>.

13         In this case, plaintiff alleges that Tassone and Smith subjected her to lethal and

14  excessive force when they pointed a loaded gun at her, which she contends is outrageous conduct

15  in light of the fact that she was behaving lawfully at the time of her detention.  (FAC ¶¶ 99, 101.)

16  She further alleges that Tassone and Smith intentionally used fear as a tool to intimidate plaintiff.

17  (FAC ¶ 101.)  She claims that she suffered great terror, fear, anxiety, stress, and emotional upset,

18  and that she continues to fear for her life.  (FAC ¶¶ 98, 105.)  Defendants argue that Tassone's

19  and Smith's conduct cannot be outrageous, because plaintiff fails to plead facts showing that her

20  detention, or the manner of her detention, was unreasonable under the Fourth Amendment.

21  However, as discussed above, the court cannot make a finding regarding the reasonableness of

22  the detention under the Fourth Amendment without making factual determinations that are

23  inappropriate at this juncture.  Additionally, the court cannot conclude, as a matter of law, that an

24  officer pointing a loaded gun at a private citizen who was allegedly improperly detained does not

25  constitute outrageous conduct for purposes of an IIED claim.

26  \\\\\

1    However, to the extent that plaintiff bases her claim on emotional distress

2  purportedly suffered as a result of the allegedly false statements in the police report,[10] that portion

3  of the claim is barred under Cal. Civ. Code § 47 for the reasons discussed above.  See Ciampi v.

4  City of Palo Alto, 790 F. Supp. 2d 1077, 1106 (N.D. Cal. 2011) ("Conduct that is privileged may

5  not form the basis for an IIED claim.").

6    Therefore, the court recommends that the portion of plaintiff's IIED claim based

7  on any alleged false statements in the police report be dismissed with prejudice, and that

8  defendants' motion to dismiss with respect to the rest of the IIED claim be denied.

9    Negligence

10    In support of her negligence claim against Tassone and Smith, plaintiff alleges

11  that Tassone and Smith negligently detained her without suspicion of criminal activity and that

12  they continued to act negligently when they approached her at gun point enhancing the risk that

13  plaintiff would be subjected to deadly force.  (FAC ¶ 48.)  She further alleges that their actions of

14  "randomly harassing law abiding citizens without any suspicion of criminal activity

15  demonstrate[] an intention to negligently abandon the duty of law enforcement.  (FAC ¶ 48.)

16    Although plaintiff uses the words "negligent" and "negligently," the conduct

17  alleged is intentional and wholly inconsistent with a negligence claim.  Jones v. Tozzi, 2006 WL

18  1582311, at *15 (E.D. Cal. June 2, 2006).  This is clear from plaintiff's allegation that Tassone

19  and Smith randomly harassed her *without any suspicion of criminal activity*, demonstrating an

20  *intention* to negligently abandon the duty of law enforcement.  (FAC ¶ 48.)

21    In its previous screening order pursuant to 28 U.S.C. § 1915, the court specifically

22  instructed plaintiff regarding the necessary elements to plead a cause of action for negligence

23  under California law, including duty, breach, causation, and damages.  (See Dkt. No. 8 at 6.)

24  However, the only duties alleged in the first amended complaint with respect to Tassone and

25

26    [10] Plaintiff alleges that "falsifying the events that lead up to the illegal detainment was intentional and used to cause Plaintiff further harm."  (FAC ¶ 103.)

22

1   Smith are the duties to "follow the law and constitution when performing law enforcement

2   duties" and "not to abuse the authority of a peace officer." (FAC ¶ 48.) Plaintiff provides no

3   authority that these duties even exist under California state law or common law, and the alleged

4   "breaches" of these duties appear to be entirely duplicative of the constitutional violations

5   alleged in plaintiff's claims under 42 U.S.C. § 1983. In any event, the court finds that plaintiff's

6   allegations are no more than "an attempt to cast intentional conduct as a negligence claim."

7   Beijing Tong Ren Tang (USA), Corp. v. TRT USA Corp., 2010 WL 98957, at *3 (N.D. Cal. Jan.

8   5, 2010).

9           Because plaintiff has already had an opportunity to amend her complaint to state a

10  proper negligence claim and because it appears implausible that plaintiff will be able to do so in

11  light of the intentional nature of the conduct alleged in this case, the court recommends that

12  plaintiff's negligence claim against Tassone and Smith be dismissed with prejudice.

13          <u>Request to Strike</u>

14          Finally, defendants request that the court strike paragraphs 34, 55, and 93 of the

15  first amended complaint insofar as they contain improper references to individuals and events in

16  one of plaintiff's other actions pending in this district against the City of Elk Grove and some of

17  its police officers. <u>See</u> 11-cv-678-KJM-CKD. In particular, plaintiff alleges that Tassone and

18  Smith called Lance McDaniel, a City of Elk Grove police officer, to help McDaniel create a false

19  report claiming that plaintiff is violent, belligerent, and suspicious to support McDaniel's illegal

20  acts against plaintiff and mount a defense against plaintiff's civil claim against McDaniel.

21  Defendants correctly point out that these allegations are irrelevant and immaterial to the claims at

22  issue in this case. Accordingly, the court will strike the portions of paragraphs 34, 55, and 93

23  that refer to Lance McDaniel or plaintiff's action and claims pending against McDaniel and the

24  City of Elk Grove. <u>See</u> Fed. R. Civ. P. 12(f) ("The court may strike from a pleading...any

25  redundant, immaterial, impertinent, or scandalous matter.")

26  \\\\\

<u>Further Amendment of the Complaint</u>

Because the court recommends that some of plaintiff's claims be dismissed with prejudice and that defendants' motion to dismiss as to the remaining claims be denied, it would ordinarily not be necessary to require the filing of an amended complaint.  However, as discussed above, plaintiff's claims are currently scattered throughout the complaint in a hodgepodge fashion, with portions of claims occurring in different causes of action and federal and state law claims sometimes combined in a single cause of action.  This complexity is now compounded by the court's recommendation that certain claims be dismissed with prejudice.  Therefore, to avoid future confusion in terms of case management and discovery, the court concludes that the filing of a second amended complaint is warranted.

Assuming that the district judge adopts this court's findings and recommendations, the second amended complaint shall set forth <u>separate causes of action</u> for each of plaintiff's surviving claims against <u>defendants Tassone and Smith</u>, i.e. claims for: (1) unlawful detention in violation of the Fourth Amendment under 42 U.S.C. § 1983; (2) unlawful search in violation of the Fourth Amendment under 42 U.S.C. § 1983; (3) excessive force in violation of the Fourth Amendment under 42 U.S.C. § 1983; (4) conspiracy to violate plaintiff's Fourth Amendment rights under 42 U.S.C. § 1983; (5) assault under California state law; and (6) intentional infliction of emotional distress under California state law (premised on the manner of plaintiff's detention only).  Plaintiff shall not include any references to other statutes, laws, or constitutional provisions in these causes of action and shall not combine claims within a single cause of action.  Furthermore, plaintiff shall not include allegations that refer to Lance McDaniel or plaintiff's action and claims pending against McDaniel and the City of Elk Grove in another action (11-cv-678-KJM-CKD).

<u>Plaintiff's "Motion for Summary Judgment"</u>

Plaintiff's March 6, 2012 filing was captioned as "Plaintiff's Motion in Opposition of Motion to Dismiss/Strike; Motion for Summary Judgment; Memorandum of

1   Points and Authorities in Support." (Dkt. No. 25.)  Although the filing sets out the legal standard

2   for a motion for summary judgment, it essentially reads like an opposition to defendants' motion

3   to dismiss and is construed by the court as such.  To the extent it can be construed as a purported

4   motion for summary judgment, it has not been noticed for hearing in accordance with E.D. Cal.

5   L.R. 230 and fails to comply with the requirements of E.D. Cal. L.R. 260.  Accordingly, it will be

6   denied without prejudice as procedurally improper.  Plaintiff is cautioned that any future filings

7   that fail to comply with the notice and filing requirements of the Local Rules and/or the Federal

8   Rules of Civil Procedure will be stricken.

9                  U.S. Marshal's Request for Reimbursement of Service Costs

10                 The court notes that, on March 6, 2012, the U.S. Marshal filed a request for

11  reimbursement of costs for effecting service on defendant County of Sacramento.  (Dkt. No. 24.)

12  Additionally, on March 9, 2012, the U.S. Marshal filed a request for reimbursement of costs for

13  effecting service on defendants Sacramento County Sheriff Department and Jeana Zwolinski.

14  (Dkt. No. 28.)

15                 Rule 4(d) of the Federal Rules of Civil Procedure provides, in pertinent part, that:

16                 An individual, corporation, or association that is subject to service
                   under Rule 4(e), (f), or (h) has a duty to avoid unnecessary
17                 expenses of serving the summons. . . .

18                 If a defendant located within the United States fails, without good
                   cause, to sign and return a waiver requested by a plaintiff located
19                 within the United States, the court must impose on the defendant:
                   (A)  the expenses later incurred in making service; and
20                 (B)  the reasonable expenses, including attorney's fees, of any
                   motion required to collect those service expenses.

21

22  Fed. R. Civ. P. 4(d)(1), (2)(A), (B).  However, the court's docket reveals that all defendants,

23  including defendants County of Sacramento, Sacramento County Sheriff Department, and Jeana

24  Zwolinski, in fact executed waivers of service of summons and that the waivers were filed with

25  the court prior to the U.S. Marshal attempting service by other means.  (See Dkt. Nos. 18-20.)

26  Therefore, the U.S. Marshal's request for reimbursement of costs for its subsequent service

                                                   25

1    attempts on these defendants will be denied.

2    CONCLUSION

3            In accordance with the above, IT IS HEREBY ORDERED that:

4            1.  The portions of paragraphs 34, 55, and 93 in the first amended complaint that

5    refer to Lance McDaniel or plaintiff's action and claims pending against McDaniel and the City

6    of Elk Grove in another action (11-cv-678-KJM-CKD) are stricken.

7            2.  Further amendment of the complaint is not allowed until final resolution of the

8    motion to dismiss by the district judge.

9            3.  Any formal discovery in this matter is stayed pending final resolution of the

10   motion to dismiss by the district judge.

11           4.  Plaintiff's purported "motion for summary judgment" (dkt. no. 25) is denied

12   without prejudice as procedurally improper.

13           5.  The U.S. Marshal's requests for reimbursement of service costs (dkt. nos. 24,

14   28) are denied.

15           6.  The Clerk of Court shall serve a copy of this order on the U.S. Marshal.

16           IT IS ALSO HEREBY RECOMMENDED that:

17           1.  Defendants' motion to dismiss (dkt. no. 21) be granted in part and denied in

18   part.

19           2.  Defendants County of Sacramento, Sacramento County Sheriff Department,

20   Jeana Zwolinski, Matt Morgan, and Scott Jones be dismissed from the action with prejudice;

21           3.  Plaintiff's claims against defendants Tassone and Smith be dismissed with

22   prejudice, with the exception of plaintiff's claims for (1) unlawful detention in violation of the

23   Fourth Amendment under 42 U.S.C. § 1983; (2) unlawful search in violation of the Fourth

24   Amendment under 42 U.S.C. § 1983; (3) excessive force in violation of the Fourth Amendment

25   under 42 U.S.C. § 1983; (4) conspiracy to violate plaintiff's Fourth Amendment rights under 42

26   U.S.C. § 1983; (5) assault under California state law; and (6) intentional infliction of emotional

distress under California state law (premised on the manner of plaintiff's detention only), as to which defendants' motion to dismiss should be denied.

        4.  Plaintiff be required to file a second amended complaint in accordance with the findings and recommendations within 28 days of the district judge adopting the findings and recommendations, if they are adopted.

        These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven (7) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 21, 2012

                             /s/ Gregory G. Hollows
                    UNITED STATES MAGISTRATE JUDGE

GGH/wvr
alston.2078.mtd.wpd